Lowe v. Felt.


# LIMITATION OF ACTIONS—MORTGAGES.

[Lucas (6th) Circuit Court, February 27, 1909.]

Parker, Wildman and Kinkade, JJ.

ELLA FELT LOWE, EXRX. v. SUMNER D. FELT ET AL.

1. BAR OF STATUTE OF LIMITATIONS SAVED FROM RUNNING BY THREE METHODS.

Either one of the three methods, prescribed by Sec. 4992 Rev. Stat., for keeping claims alive, payment, promise of payment or acknowledgment thereof, complies with the saving clause of the statute and is adequate to prevent its running. Hence, payment of a sum of money within fifteen years after the maturing of a note secured by mortgage, is sufficient to constitute an acknowledgment of an existing liability.

2. PAYMENTS TO PREVENT OPERATION OF BAR OF LIMITATION OF ACTIONS.

A nephew having an interest in a mortgage upon his uncle's lands, transferring his interest therein to his brother by written assignment, recognizes the existence and validity of the mortgage and note secured thereby; and having obtained within a month thereafter a warranty deed of the mortgaged premises in which he subsequently grants back a life estate to the uncle in pursuance of a family arrangement to leave him in possession undisturbed during his life, cannot assert that payments made by him and endorsed upon the note did not operate to keep the mortgage alive after the uncle's death.

3. PAYMENTS ON OR ACKNOWLEDGMENTS OF MORTGAGE DEBT OPERATING TO PRESERVE LIEN THOUGH DEBT BARRED.

Payments on or acknowledgments of a debt secured by mortgage, by the owner of an equity of redemption may operate to keep the mortgage lien alive as against the statute of limitations although a right of action on the debt against the original debtor may be barred.

[Syllabus approved by the court.]

APPEAL from Lucas common pleas court.

**Faling & Eppstein,** for plaintiff:

The establishment of a trust in lands by parol. *Paddock* v. *Adams,* 56 Ohio St. 242 [46 N. E. Rep. 1068]; *Fleming* v. *Donahoe,* 5 Ohio 255; *Harvey* v. *Gardner,* 41 Ohio St. 642; *Bettman* v. *Hunt,* 9 Dec. Re. 396 (12 Bull. 286).

A mortgage is a specialty upon which the statutory period of limitation is fifteen years. *Kerr* v. *Lydecker,* 51 Ohio St. 240 [37 N. E. Rep. 267; 23 L. R. A. 842]; *Bradfield* v. *Hale,* 67 Ohio St. 316 [65 N. E. Rep. 1008]; *Hall* v. *Bradfield,* 12 Circ. Dec. 339 (21 R. 184).

Payment and acknowledgment. *Irwin* v. *Longworth,* 20 Ohio 581; McKelvey, Evidence Sec. 275; *Risley* v. *Wightman,* 13 Hun. 163; *United States Tr. Co.* v. *Stanton,* 76 Hun. 32 [27 N. Y. Supp. 614]; *Hearman,* In re, 45 N. Y. 177 [19 N. Y. Supp. 539]; 1 Ad. & Ell. 102; *Hathaway* v. *Haskell,* 26 Mass. (9 Pick.) 42; *Hawley* v. *Griswold,* 42 Barb. (N. Y.) 18; 19 Am. & Eng. Enc. Law 328; *Peabody* v. *North,* 161 Mass. 525

Lucas County.

[37 N. E. Rep. 744]; *McKeon* v. *Byington,* 70 Conn. 429 [39 Atl. Rep. 853]; *Stancell* v. *Burgwyn,* 124 N. C. 69 [32 S. E. Rep. 378]; *Erpelding* v. *Ludwig,* 39 Minn. 518 [40 N. W. Rep. 829]; *State Nat. Bank* v. *Harris,* 96 N. C. 118 [1 S. E. Rep. 459]; *Roseboom* v. *Billington,* 17 Johns. (N. Y.) 182; *Oughterson* v. *Clark,* 65 Hun. 624 [20 N. Y. Supp. 381]; *Read* v. *Hurd,* 7 Wend. (N. Y.) 408; *Butcher* v. *Hixton,* 4 Leigh. (Va.) 519; *Coffin* v. *Secor,* 40 Ohio St. 637 [48 Am. Rep. 689]; *Drouilliard* v. *Wilson,* 1 Dec. Re. 555 (10 W. L. J. 385); 4 Ad. & Ell. 71; 11 Am. & Eng. Enc. Law 926, 934; *Dickenson* v. *McDermott,* 13 Tex. 248; *Merritt* v. *Horne,* 5 Ohio St. 307 [67 Am. Dec. 298].

Mortgage is a demand founded upon executory contract. *McQuade* v. *Rosecrans,* 36 Ohio St. 442; *Evans* v. *Beaver,* 2 Circ. Dec. 28 (3 R. 47), affirmed, *Evans* v. *Beaver,* 50 Ohio St. 190 [33 N. E. Rep. 643; 40 Am. St. Rep. 666].

By whom payment must be made to bar running of the statute. *Dater* v. *Bruner,* 8 Dec. Re. 699 (9 Bull. 220); *Bank* v. *Piatt,* 5 Ohio 540; *Justice* v. *Uhl,* 10 Ohio St. 170; *Wilson* v. *Giddings,* 28 Ohio St. 554; 1 Nash, Pl. & Pr. (4 ed.) 724; *Fisher* v. *Mossman,* 11 Ohio St. 42; *Longworth* v. *Taylor,* 13 Dec. Re. 755 (2 C. S. C. 39); *Morrison* v. *Martin,* 10 Dec. Re. 738 (23 Bull. 246); *Gary* v. *May,* 16 Ohio 66; *Fisher* v. *Mossman,* 11 Ohio St. 42; *Kulp* v. *Kulp,* 51 Kan. 341 [32 Pac. Rep. 1118; 21 L. R. A. 550]; *David* v. *Fauble,* 29 O. C. C. 495 (9 N. S. 263); *Allen* v. *Everly,* 24 Ohio St. 97; *Bissell* v. *Jaudon,* 16 Ohio St. 498; *Hall* v. *Bradfield,* 12 Circ. Dec. 339 (21 R. 184); *Baily* v. *Smith,* 14 Ohio St. 396 [84 Am. Dec. 385]; *Murdock* v. *Waterman,* 145 N. Y. 55 [39 N. E. Rep. 829; 27 L. R. A. 418]; *Lawton* v. *Adams,* 7 Circ. Dec. 129 (13 R. 233); 12 L. R. Eq. 51; 11 House of L. 115; 1 De G. & J.; 25 Cyc. 1392; *Tuttle* v. *Armstead,* 55 Conn. 175 [22 Atl. Rep. 677].

Laches. *Gault* v. *Columbus,* 13 Dec. 575 (1 N. S. 201); *Lloyd* v. *Telephone Co.* 18 Dec. 809 (5 N. S. 279); *Crawford* v. *Madigan,* 13 Dec. 494; *Joyce* v. *Dauntz,* 55 Ohio St. 538 [45 N. E. Rep. 900]; Pomeroy, Eq. Jur. Sec. 798; Sheldon, Subrogation Secs. 49, 50, 51, 54; *Warner* v. *York,* 15 Circ. Dec. 310 (1 N. S. 73); Jones, Mortgages Sec. 869.

Rights against railroad company. 19 Am. & Eng. Enc. Law 315.

Interest. 25 Cyc. 1373; 8 Bing. 309; *Fisk* v. *Stewart,* 24 Minn. 97; *Conwell* v. *Buchanan,* 7 Blackf. (Ind.) 537; *Barron* v. *Kennedy,* 17 Cal. 574; *Sigourney* v. *Drury,* 14 Pick. (Mass.) 387; *Huntington* v. *Chesmore,* 60 Vt. 566; *Roosevelt* v. *Mark,* 6 Johns. Ch. (N. Y.) 266.

Indorsement of payment on note. 1 Ad. & Ell. 102; *Hathaway* v. *Haskell,* 26 Mass. (9 Pick.) 42; *Hawley* v. *Griswold,* 42 Barb. (N. Y.) 18; *Roseboom* v. *Billington,* 17 Johns. (N. Y.) 182; *Read* v. *Hurd,* 7

Lowe v. Felt.

Wend. (N. Y.) 408; 45 Marr. 578; *Butcher* v. *Hixton,* 4 Leigh. (Va.) 519.

Supplemental citations. 25 Cyc. 1380; 6 Cyc. of Ev. 338; *Mc-Ginty* v. *Henderson,* 41 La. Ann. 382 [6 So. Rep. 658]; *Russ* v. *Cunningham,* 16 S. W. Rep. 446 (Tex.); *Hollister* v. *York,* 59 Vt. 1 [9 Atl. Rep. 2]; *Cleveland* v. *Harrison,* 15 Wis. 670; *Murdock* v. *Robinson,* 71 Hun. 320 [25 N. Y. Supp. 120]; *McGehee* v. *Blackwell,* 28 Ark. 27; *Hubbard* v. *Clark,* 7 Atl. Rep. 26 (N. J.); *Haines* v. *Watts,* 53 N. J. Law 455 [21 Atl. Rep. 1032]; *Townsend* v. *Ingersoll,* 43 How. Pr. 276; *Conrad* v. *Archer,* 7 N. Y. St. Rep. 646.

**Sumner Felt** and **A. P. McKee, Esq.,** for defendant.

**WILDMAN, J.**

In the case of Ella Felt Lowe, as executrix of the estate of Clinton H. Felt, deceased, against Sumner D. Felt and others, the transactions with reference to certain real estate have had such a history as might justify the court in spending some time in reviewing the facts presented, not only by the pleadings, but by the evidence which has been submitted to us, the case being one appealed to this court from the court of common pleas.

Mrs. Lowe, as executrix of the estate of Clinton Felt, her deceased husband, brings suit to foreclose a mortgage upon certain real estate, the title to which is in Sumner D. Felt, one of the defendants.

In the year 1870, one Milo Felt, an uncle of the present parties, Mrs. Lowe and Sumner Felt, and Alice M., his wife, executed a note and mortgage, to one Dorman Felt who was the father of Clinton and Sumner and a Mrs. Bostwick. At his death the note and mortgage passed to the sons and the daughter, Mrs. Bostwick, and by subsequent release became the property of Clinton; and upon Clinton's death, by his will, it becomes the property of Ella Lowe, as executrix. The question upon foreclosure, and the sole question, is whether the right to proceed upon the mortgage against the land has been barred by lapse of time under our statute of limitations.

The mortgage and note were due November 1, 1871, at which time a right of action accrued and the statute began to run. The note was made payable to Dorman Felt or bearer, and to secure its payment the mortgage was given upon the land which is now sought to be subjected, a farm of some 160 acres situated near Monclova, in this county. At the time of the giving of the mortgage, the title in fee was in the wife of Milo, Alice M. Felt. Upon her death in 1883 the equity of redemption passed to Milo S. Felt, her husband.

Lucas County.

Two transactions occurred in the year 1885 which may or may not have had any special reference to each other. After the death of Dorman Felt, the father of Clinton and Sumner, by written assignment on August 10, 1885, Sumner transferred his interest in the mortgage and note to his brother Clinton. There can be no question that at that time, and by that transaction, he recognized the existence and validity of the note and mortgage. · A little more than a month later and in the same year, he obtained, by warranty deed, the title to the real estate from his uncle Milo, who, as I have stated, had succeeded to the interest of Alice Felt, his wife. There is no claim that Sumner was a purchaser without knowledge of the existence of the lien upon the land, or the existence of the debt, and manifestly a claim of that kind would be idle in view of the fact that he had by writing expressly assigned an interest in the note and mortgage, only a little more than a month prior to his obtaining the conveyance from his uncle Milo of the real estate.

But a period of more than fifteen years has elapsed from the time of the maturity of the note, and indeed from the time of the acknowledgment of the note by the assignment to Clinton, before the beginning of the present suit, and the question arises whether certain subsequent transactions between the parties interested have operated to keep the mortgage alive.

A conveyance was made back from Sumner to his uncle Milo, by which the possession of the property was to remain with Milo during his lifetime, and it did so remain. His possession of the property was not disturbed, and without any consideration of oral evidence it might be assumed that the family relation had operated upon the minds of all parties to induce them to leave Milo in the undisturbed possession of the property as a home during his life. Both Sumner and Clinton may be assumed to have had the natural affection which nephews would have for their uncle, and their disposition to leave him in the control of the property seems to have been shared and the plan or purpose to have been carried out in like spirit by the widow of Clinton, after his death.

There appears upon the mortgage under date of August 31, 1886, a credit of $20, and another of like amount on October 1, 1895. A claim is urged upon us in behalf of Sumner that these credits, while made by his consent, were not evidence of real payments made—that they were mere forms designed to protect the possession of their uncle Milo, in view of the possibility of some other outstanding claim wresting the property from him. This mortgage was a first mortgage,

Lowe v. Felt.

and by keeping it alive he would be protected in the possession of the property when otherwise he might be dispossessed. That is the contention of Sumner Felt, the principal defendant here, as we understand it. He says that these endorsements made upon the paper were merely formal as between him and the holder of the mortgage, and were not to operate to keep the mortgage alive after the death of Milo. We cannot, however, so look at those transactions. We do not think that the competent evidence taken as a whole indicates this. There is nothing in any of the written evidence to indicate that there was any intention that the mortgage should remain alive merely until the death of Milo, and that then it should become *eo instanti* barred by lapse of time. The written assignment of his interest in the mortgage made in 1885 to his brother Sumner recognized its validity as a security for the existing debt. The correspondence between the parties, the letters, all indicate the same thing.

The deposition of Sumner has been taken to disprove the inference which might be drawn from these writings, and his evidence so far as it relates to transactions after the death of. his brother Clinton, is competent. We do not deem it competent as to the transactions occurring before that death, except in so far as it may be made so in rebuttal of evidence as to particular transactions with regard to which evidence was offered on the other side. I do not care to go over these letters in detail. I might, however, in passing, refer to one written after the death of his uncle Milo, in which he substantially recognized the mortgage. Perhaps standing alone, this letter would not be such a written acknowledgment as is essential under the statute to take the case out of the statute of limitations. Nor is it an express promise to pay, but we think that it is very persuasive evidence to show that he did not understand that the mortgage was to expire with the death of Milo. He substantially says in the letter:—I will not attempt to repeat its precise phraseology, and will not now look for it in this voluminous bundle of papers before me—that by reason of his business matters he is unable at present to take care of the mortgage, but that he will see her, Mrs. Lowe, or Mrs. Felt perhaps, at a time later with regard to it. It would seem that, if he were right in his contention that those endorsements on the paper were signed only to protect the interests of Milo, now after the death of Milo, when called upon to pay the indebtedness which was a lien upon his land, he would at once have asserted this claim which he now urges before this court. The letter, together with his other correspondence in which he consents to the endorsements upon

the paper, are sufficient, we think, under the statute to keep the mortgage alive.

The claim for a personal judgment against the estate of Alice Felt is probably barred by lapse of time, and the same would be true as against Milo Felt, who joined with her in the making of the evidences of the original indebtedness. It may be altogether true that the time has expired within which any suit could be brought by the executrix of Clinton Felt to recover a personal judgment against any representative of the estate of Alice or Milo. But it does not follow that the failing of the right to sue upon the original personal claim drags down with it the right to foreclose a lien upon the real estate. In reference to adjudications bearing upon the question of a written acknowledgment as affecting the right to sue after a lapse of the time fixed by the statute of limitations to bar a claim, Judge Kinkade has opened before me *Coffin* v. *Secor*, 40 Ohio St. 637, which reports very briefly a case which went to the Supreme Court from this county, and in which a somewhat similar acknowledgment to that embodied in the letter written by Sumner Felt after the death of Milo was held by the Supreme Court to be sufficient to keep the claim alive. We have found other cases in which a mere reference to the mortgage, reciting its existence as a lien upon the property, was held a sufficient acknowledgment, and some other cases where the party had indicated by his written acknowledgment his knowledge of the existence of the mortgage and his view that it was still in effect. There is no magic in the words. We cannot tie parties to precise words, and say that a certain form of acknowledgment must be adopted, for the statute has not prescribed any form. Any written acknowledgment of an existing liability or any promise to pay signed by the party who is sought to be held is sufficient under the statute, and we do not see how a party could in any way have more clearly indicated his belief that this was a valid claim against the land which he owned than has been evinced by Sumner Felt in this case in the whole course of the transactions.

As to the endorsement of August 31, 1886, even if it does not evidence an actual payment, the writing signed by Sumner Felt at that time in the way amounted to an acknowledgment of the existing debt. The statute (Sec. 4992 Rev. Stat.) provides three methods by which the claim may be kept alive, one is payment, another a promise of payment, and the third, an acknowledgment. Either one of these three, standing alone and without the others, if it fully complies with this saving section in the statute of limitations, is adequate to keep the claim alive. Now as to this one of August 31, 1886, which was less than

Lowe v. Felt.

fifteen years after the maturing of the note in November, 1871, we think that it was a sufficient acknowledgment of an existing liability.

On October 1, 1895, and after the death of Clinton Felt, there was a transaction between Sumner and his sister-in-law, the present plaintiff or widow of Clinton, which resulted in another endorsement of $20 upon the paper, and this endorsement was within the statutory period of limitations prior to the beginning of the suit. Our Supreme Court in one case has used certain language which might upon a hasty examination convey the impression that if a note is barred by lapse of time, the mortgage must necessarily be also barred by lapse of the same time; but while this is true in a general way, it is only because the statute of limitations applicable to mortgages happens to be the same statute of limitations as to notes. The Supreme Court has expressly held that where a mortgage is given to secure an account, which is barred in six years, the statute of limitations applicable to the mortgage is still the fifteen-year one. In other words, if a mortgage is given to secure an account, the right to sue upon the account terminates at the end of six years, but the mortgage continues to run for the residue of the entire period of fifteen years, which is the statutory limitation upon a contract under seal or a specialty such as a mortgage.

Referring again to this endorsement of October 1, 1895, and the testimony of the parties, and in this matter that of Sumner is competent as well as that of the others, we have sufficient to indicate to our minds that Sumner Felt did perform some services either to the widow, his sister-in-law, or to her son. Really, it was perhaps at the request of the son or upon conversation with the son, but she accepted the benefit of it, and upon arrangement between them, compensation to the amount of $20 was agreed to, and it was expressly arranged that it should be endorsed upon this paper. His claim is that it was only for the purpose of keeping the mortgage alive during the lifetime of Milo, but we think that the evidence does not indicate that she had such an understanding of the matter. On the contrary, we think that it is clearly indicated in her letters to him, that she was insisting that he make some endorsement in writing, and when they turned the charge for services upon the note, that she was all the time insisting upon his consent to make that endorsement for the very purpose of keeping it alive. She was relying upon this claim.

It is our judgment that the lien of the mortgages has not been lost by lapse of time. Decree will be entered for its foreclosure.